RONDA BALDWIN-KENNEDY, ESQ.
LAW OFFICES OF RONDA BALDWIN-KENNEDY
5627 Kanan Rd., Suite 614
Agoura Hills, CA 91301
Telephone: (951) 268-8977
Facsimile: (702) 974-0147

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALKIVIADES DAVID; FILMON TV LTD.; FILMON TV INC.; ALKI DAVID PRODUCTION INC.; HOLOGRAM USA; SWISSX. | Case No.:  2:23-cv-01731 |
| *Plaintiff(S),* | 1. CIVIL RACKETEERING |
| vs. | |
| THOMAS GIRARDI, ESQ; GLORIA ALLRED, ESQ.; LISA BLOOM; ESQ.; NATHAN GOLDBERG, ESQ.; RENEE MOCHKATEL ESQ.; DOLORES Y. LEAL ESQ.; JOSEPH CHORA; ALLRED, MAROKO & GOLDBERG; ELIZABETH TAYLOR MAHIM KHAN; CHASITY JONES; LAUREN REEVES; | |
| *Defendants(s)* | |

1. CIVIL RACKETEERING - 1

## **INTRODUCTION**

1.    Former and now disbarred attorney Thomas Girardi was successful in organizing a parasitic criminal element into the California state judiciary that span more than four decades and victimized numerous litigant defendants and insurance companies.

2.    The criminal enterprise created by Thomas Girardi was guised as the Law Firm of Girardi-Keese, but in reality, the organization engaged in various schemes types to defraud clients, victimized litigant defendants, and even federal and state court systems throughout the United States. Many attempts to alter or stop the organization identified *infra* in this lawsuit as the GIRARDI-KEESE Enterprise have been futile save for the courageous reporting steps taken against Thomas Girardi by the plaintiffs to the instant lawsuits and the Honorable United States District Judge Thomas Durkin, Northern District of Illinois, from another and unrelated Girardi scheme case, *In re Lion Air Flight JT 610 Crash* (18 C 7686 at *1-2 (N.D. Ill. Nov. 2, 2022),

3.    Due to Thomas Girardi's massive acquisition of illegally derived wealth, political, and judicial influences, Mr. Girardi was allowed to corruptly operate unscathed by state officials which subsequently deprived the opposing litigant(s) of property, reputations, constitutionally guaranteed due process, and fundamental fairness.

1. CIVIL RACKETEERING - 2

4.    Thomas Girardi engaged in fraudulent activities under the guise of common torts and or contract disputes.

5.    There are far more victims to the fraudulent practices of Mr. Girardi, however many attorneys throughout the state of California are dissuaded from commencing litigation against Girardi, due to his corrupt stronghold and state court judicial influences, to include but not limited to influence of the California State Bar.

7.    Thomas Girardi had successfully out-foxed state of California and many of the nation's federal judiciaries for over four decades.

8.    Thomas Girardi was finally charged by criminal indicted on January 31, 2023, in Cause No. 2:23-cv-00047-JFW, by the United States District Court Central District of California, in relations to the fraudulent scheme type stemming from *In re Lion Air Flight JT 610 Crash*. The plaintiffs to this lawsuit are seeking civil vindication to yet another Thomas Girardi scheme types.

> *"A lie doesn't become truth, wrong doesn't become right, and evil*
> *doesn't become good, just because it's accepted by a majority."*
>
> *Booker T. Washington*

## JURISDICTION

9.     Jurisdiction in this case is invoked onto the Court pursuant to provisions of 18 U.S.C. §1961; 18 U.S.C. §1962; U.S.C. § 1964[1] et,seq of the civil RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO); and Article III, Section 2, to the Constitution of the United States codified under 28 U.S.C. § 1331.

10.     Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is invoked in that, the amount in controversy exceeds $75,000.

## VENUE

11.     Venue is invoked pursuant to 18 U.S.C. § 1965(a)[2] and § 1965(b)[3].

---

[1] 18 U.S.C. § 1964(c)

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

[2] 18 U.S.C. 1965(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

[3] (b) In any action **under section 1964 of this chapter** in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

1. CIVIL RACKETEERING - 4

12.    Venue is also proper within this Court pursuant to 28 U.S.C. § 1391(b)(2) and § 1391(c)1, in that, plaintiffs ALKIVIADESDAVID; FILMON TV LTD.; FILMON TV INC., ALKI DAVID PRODUCTION INC., HOLOGRAM USA, SWISSX, are business entities which conducts commercial business activities thru DISH NETWORK and across the United States to include the state of California, and the Central District of California. SWISSX conducts franchise commercial business activities across the United States to include the state of California, and the Central District of California.

## **RELATED CASES**

**Cases [directly] related to the instant Girardi/Keese Enterprise Fraud Scheme:**

**Federal Cases:**

13.    UNITED STATES DISTRICT COURT FOR THE CENTRAL
        DISTRICT OF CALIFORNIA
        **ALKIVIADES DAVID v. GLORIA ALLRED ET AL**
        **2:22-cv-05926-GW-JPR**
        Judge: George H. Wu
        Jean P. Rosenbluth, referral
        Date filed: 08/20/2022
        Date terminated: 01/03/2023

**State Cases:**

14.   SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
      COUNTY OF LOS ANGELES CENTRAL DISTRICT
      **LAUREN REEVES v. HOLOGRAM USA INC ET AL**
      BC643099
      December 07, 2016
      Judge: Terry Green
      Closed

15.   SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
      COUNTY OF LOS ANGELES CENTRAL DISTRICT
      **MAHIM KHAN v. HOLOGRAM USA INC ET AL**
      BC654017
      Gloria Allred (Att)
      Filed March 14, 2017
      Judge: Michelle Williams Court
      Closed

16.   SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
      COUNTY OF LOS ANGELES CENTRAL DISTRICT
      **ELIZABETH TAYLOR / CHASITY JONES v. ALKIVIADES DAVID
      ET AL**
      BC649025
      Gloria Allred (Att)
      Lisa Bloom / Joseph Chora (Att)
      Date Filed: Feb 02, 2017
      Judge: Rafael A. Ongkeko
      Judge: Yolanda Orozco
      Closed

17.   SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE
      COUNTY OF LOS ANGELES CENTRAL DISTRICT
      **JANE DOE v. ALKIVIADES DAVID, ET AL.**
      Marguerita Nichols
      BC643099 / 20STCV37498
      Sep 30, 2020
      Thomas Girardi / Allred (Att.)
      Judge Christopher K. Lui
      Pending

**Cases [Indirectly] related to the instant Girardi/Keese Enterprise Fraud Scheme:**

18.   UNITED STATES DISTRICT COURT FOR THE NORTHERN
      DISTRICT OF ILLINOIS, EASTERN DIVISION
      **In re: LION AIR FLIGHT JT 610 CRASH**
      1:18-cv-07686
      Filed 11/19/2018
      Judge: Thomas M. Durkin
      Closed

19.   UNITED STATES DISTRICT COURT FOR THE NORTHERN
      DISTRICT OF ILLINOIS, EASTERN DIVISION
      **EDELSON PC v. GIRARDI**
      1:20-cv-7115
      November 11/16/2022
      Judge: Matthew F. Kennelly

20.   UNITED STATES DISTRICT COURT FOR THE NORTHERN
      DISTRICT OF CALIFORNIA AT SAN FRANCISCO
      **EDELSON PC v. LIRA**
      3:22-cv-0397-JSC
      Filed:7/062022
      Judge Jacqueline Scott Corley

## ABOUT THE PLAINTIFFS

21.   Plaintiff ALKIVIADES DAVID, known from hereinafter as DAVID, is a wealthy businessman and a natural person, domiciled in the state of California during all times relevant, and a citizen of the United Kingdom.

22.   Plaintiff FILMON TV LTD., known from hereinafter as, FILMON LTD, is a United Kingdom company doing business in the United States to include the state of California and internationally.

23.   Plaintiff HOLOGRAM USA., known from hereinafter as, HOLOGRAM, is a United Kingdom company doing business in the United States to include the state of California and internationally.

24.   Plaintiff FILMON TV INC., known from hereinafter as FILMON INC is a Delaware corporation, doing business internationally.

25.   Plaintiff ALKI DAVID PRODUCTIONS INC., known from hereinafter as ALKI DAVID PRODICTIONS INC., is a Delaware corporation doing business internationally.

26.   Plaintiff SWISSX, known from hereinafter as SWISSX, is a franchised company, and based in the state of Texas during all times relevant. SWISSX is a subsidiary company of FILMON TV INC.

## ABOUT THE DEFENDANTS

27.   Defendant THOMAS GIRARDI, known from hereinafter as GIRARDI, is a natural person and a resident of the State of California. Girardi is the sole equity partner of the GIRARDI -KEESE Law Firm.

28.   Defendant GLORIA ALLRED, known from hereinafter as ALLRED, is a natural person and a resident of the State of California. Allred is a partner in Allred, Maroko & Goldberg.

29.   Defendant LISA BLOOM, known from hereinafter as BLOOM, is a natural person and a resident of the State of California. Bloom is a partner in Allred, Maroko & Goldberg. BLOOM is the daughter of ALLRED.

30.   Defendant NATHAN GOLDBERG, known from hereinafter as GOLDBERG, is a natural person and a resident of the State of California. Goldberg is a partner in Allred, Maroko & Goldberg.

31.   Defendant DOLORES Y. LEAL, known from hereinafter as LEAL, is a natural person and a resident of the State of California. Leal is a partner in Allred, Maroko & Goldberg.

32.   Defendant RENEE MOCHKATEL, known from hereinafter as MOCHKATEL, is a natural person and a resident of the State of California. MOCHKATEL, is a partner in Allred, Maroko & Goldberg.

33.   Defendant JOSEPH CHORA is a natural person and a resident of the State of California. CHORA is a partner in CHORA YOUNG & MANASSERIAN LLP.

34.   Defendant ALLRED, MAROKO & GOLDBERG, known from hereinafter as AMG, is a California Law Firm by Partnership.

35.    Defendant ELIZABETH TAYLOR, known from hereinafter as TAYLOR, is a natural person and a resident of the State of California.

36.    Defendant MAHIM KHAN, known from hereinafter as KHAN, is a natural person and a resident of the State of California.

37.    Defendant CHASITY CHARNISE JONES, known from hereinafter as JONES, is a natural person and a resident of the State of California and of the state of Texas.

38.    Defendant LAUREN REEVES, known from hereinafter as REEVES, is a natural person and a resident of the State of California.

## THE RICO ENTERPRISE

39.    The racketeering enterprise of GIRARDI-KEESE, are "*associates in fact*" and formed as a group of persons informally associated together for a common purpose of engaging in a course of conduct as a continuing unit to defraud.

40.    During an unknown period but approximately between the dates of December 7, 2016 through the present day and thereafter, said persons [identified and referenced above as defendants] associated together to form an enterprise within the meaning of Section § 1961(4) which devised a scheme to defraud Plaintiffs and other members of the public by way of fraudulently induced civil litigation awards and judgments through the California state courts.

41.   The entity known from hereinafter as the GIRARDI-KEESE Enterprise, acted in concert with the above named defendants and others in furtherance of a scheme to victimize by defrauding (by means to include but not limited to wire fraud) wealthy persons, corporations (both domestic and international), celebrities, and business executives, to include Plaintiffs to the instant case.

42.   Defendants REEVES, KHAN, and TAYLOR acted as "runners" or otherwise recruiters.

43.   Defendants REEVES, KHAN, and TAYLOR further acted as non-attorney co-participant clients in one or more civil litigation schemes involving the GIRARDI-KEESE Enterprise.

44.   Defendant JONES engaged in activities of the GIRARDI-KEESE Enterprise as a non-attorney co-participant clients in one civil litigation schemes involving the GIRARDI-KEESE Enterprise.

45.   Other persons engaged in the GIRARDI-KEESE Enterprise, and acting in concert with REEVES, KHAN, TAYLOR, and JONES, were ALLRED, GOLDBERG, MOCHKATEL, ALLRED, MAROKO & GOLDBERG (AMG), CHORA, BLOOM, MARGUERITA NICHOLS known from herein as JANE DOE who was represented by GIRARDI, and WILSON.

46.   LEAH WILSON known from hereinafter as WILSON served at all times relevant as the Executive Director of THE STATE BAR OF CALIFORNIA.

47.   GAVIN NEWSOM KNOWN FROM HEREINAFTER AS NEWSOM is the Governor of the State of California who appointed four of the six members to the Board of Directors of THE STATE BAR OF CALIFORNIA.

48.   NEWSOM is a recipient of funds derived by GIRARDI through a pattern of racketeering activities.

49.   NEWSOM politically benefited from schemes to defraud by the GIRARDI-KEESE Enterprise.

50.   Defendant CHORA is the "enforcer" or otherwise unlawful debt collections arm for the GIRARDI-KEESE Enterprise.

51.   COMCAST INC. (formerly known as American Cable Systems and Comcast Holdings) and known from hereinafter as COMCAST INC., is headquartered in Philadelphia, PA.

52.   COMCAST INC., is the largest of America's multinational telecommunications platforms for broadcasting and cable television.,

53.   COMCAST VENTURES, LLC., known from hereinafter as COMCAST VENTURES is a venture capital firm headquartered in San Francisco, California and a subsidiary of COMCAST INC.

54.   Both CONCAST INC., and COMCAST VENTURES, are associated with the GIRARDI-KEESE Enterprise for the purpose of engaging in a course of racketeering conduct. NBC News, CNBC, and MSNBC are owned by

COMCAST INC., which also owns UNIVERSAL PICTURES and is a minority partner to five Chinese state-owned companies.

55.   COMCAST INC., and COMCAST VENTURES, through their control of major media networks and outlets, engaged in a course of conduct to further conceal or otherwise secret the fraudulent activities of the GIRARDI-KEESE Enterprise.

56.   COMCAST INC., and COMCAST VENTURES censored DAVID or caused DAVID to be censored on its media platforms for the common purpose of continuing the long-term operation of the GIRARDI-KEESE Enterprise.

## TO PREVAIL IN A RICO ACTION

57.   To prevail on a civil RICO claim the plaintiffs must show, among other elements, a "pattern of racketeering activity." 18 U.S.C. § 1962. " 'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code," including extortion and mail and wire fraud. *Rothman v. Vedder Park Management,* 912 F.2d 315, 316 (9th Cir.1990). *All Direct Travel Services, Inc. v. Delta Air Lines, Inc.*, 120 F. App'x 673, 675 (9th Cir. 2005)

## RICO PREDICATES UNDER 18 U.S.C. § 1961

58.   The first predicated act of racketing for the purpose of this lawsuit is established under the provisions of the federal WIRE FRAUD statute as set out in 18 U.S.C. § 1343.

59.   On December 07, 2016, the GIRARDI-KEESE Enterprise utilized the "electronic court document filing system" (EFSP) to the Superior Court of Los Angeles County, California, to register the case of LAUREN REEVES in the matter of LAUREN REEVES v. HOLOGRAM USA INC ET AL, Case No. BC643099.

60.   The (EFSP) electronic court filing was done as part of a continuing course of racketeering activities to defraud wealthy persons, corporations (both domestic and international), celebrities, and business executives to include Plaintiffs to the instant case.

61.   The second predicated act of racketing for the purpose of this lawsuit is established under the provisions of the federal WIRE FRAUD statute as set out in 18 U.S.C. § 1343.

62.   On February 2, 2017, the GIRARDI-KEESE Enterprise utilized the "electronic court document filing system" (EFSP) to the Superior Court of Los Angeles County, California, to register the case of ELIZABETH TAYLOR and CHASITY JONES in the matter of ELIZABETH TAYLOR, CHASITY JONES v. ALKIVIADES DAVID, ET AL, Case No. BC649025.

63.   The (EFSP) electronic court filing was done as part of a continuing course of racketeering activities to defraud wealthy persons, corporations (both domestic

and international), celebrities, and business executives to include Plaintiffs to the instant case.

64.    The third predicated act of racketing for the purpose of this lawsuit is established under the provisions of the federal WIRE FRAUD statute as set out in 18 U.S.C. § 1343.

65.    On March 14, 2017, the GIRARDI-KEESE Enterprise utilized The (EFSP) "electronic court document filing system" to the Superior Court of Los Angeles County, California, to register the case of MAHIM KHAN in the matter of MAHIM KHAN v. HOLOGRAM USA INC ET AL, Case No. BC654017.

66.    The (EFSP) electronic court filing was done as part of a continuing course of racketeering activities to defraud wealthy persons, corporations (both domestic and international), celebrities, and business executives to include Plaintiffs to the instant case.

67.    The fourth predicated act of racketing for the purpose of this lawsuit is established under the provisions of the federal WIRE FRAUD statute as set out in 18 U.S.C. § 1343.

68.    On September 30, 2020, the GIRARDI-KEESE Enterprise utilized the "electronic court document filing system" (EFSP) to the Superior Court of Los Angeles County, California, to register the case of JANE DOE aka / Marguerita

Nichols, in the matter of JANE DOE v. ALKIVIADES DAVID, ET AL., Case No. BC643099 / 20STCV37498.

69.    The (EFSP) electronic court filing was done as part of a continuing course of racketeering activities to defraud wealthy persons, corporations (both domestic and international), celebrities, and business executives to include Plaintiffs to the instant case.

## THE GIRARDI-KEESE ENTERPRISE COMMON PURPOSE

70.    For decades corrupt California based attorneys to include but not limited to: GARARDI; ALLRED; BLOOM; GOLDBERG; MOCHKATEL; LEAL, and CHORA have developed and operated a racketeering enterprise in what is estimated by federal prosecutors to well exceed $100 million USD, by sophisticated scheme[s].

71.    The common purpose of the GIRARDI-KEESE Enterprise in the instant scheme, was to defraud for the purpose of acquiring illicit money from wealthy persons, corporations (both domestic and international), celebrities, and business executives through a pattern of civil litigations facilitated by false or fraudulent (sexually related) allegations.

72.    In furtherance of the scheme to defraud, the GIRARDI-KEESE Enterprise, through bribes and or industry favors (to include judicial and political favors or support), acquired lucrative court induced monetary judgments, Judgment Liens,

awards and or concealment favors, inasmuch, that the Enterprise's course of conduct functioned as a continuing unit.

73.    The Enterprise's course of conduct further elicited the aid and assistance of non-attorney co-participants for the common purpose of the scheme to defraud by corrupted litigation, to include but not limited to:  ELIZABETH TAYLOR; MAHIM KHAN; LAUREN REEVES; CHASITY CHARNISE JONES; LISA BLOOM; JOSEPH CHORA; GAVIN NEWSOM; LEAH WILSON; THE STATE BAR OF CALIFORNIA; COMCAST INC.; and COMCAST VENTURES.

## **THE RICO COURSE OF CONDUCT TO DEFRAUD**

74.    The racketeering scheme or otherwise course of conduct as prosecuted in this lawsuit comprises of both known and unknown participants but was formulated and orchestrated by the parties named above as RICO defendants.

75.    One of the many schemes but in particular, the instant scheme to defraud[4] by corrupted litigation involves the GIRARDI–KEESE Law Firm, and its

---

[4] A plaintiff must state claims grounded in fraud with particularity. Fed.R.Civ.P. 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir.2003).  Rule 9(b) applies to cases brought in federal court irrespective of whether the substantive law is state or federal. *Id.* at 1102.

conspiring and colluding with other California based attorneys, private judges, active judges, and a select group of non-attorney co-participants clients.

76.   The non-attorney co-participants, while purporting to be legitimate clients of the GIRARDI-KEESE Law Firm, or attorneys acting in concert therewith, engaged in a course of racketeering activities in furtherance of the scheme to defraud.

77.   On or about June 2, 2015 evidence establishes that Defendants ALLRED and TAYLOR conspired with one another to encourage others to join with the Enterprise's common scheme and purpose to defraud. The other parties were KHAN and JONES as evidenced by the text records.

78.       TAYLOR: ***"No one is willing to be a witness now and Gloria Allred won't take my case if not***. *If the tables were turned I would have you girls back in a heartbeat. No questions asked. This entire thing just sucks & all leads back to being scared of Alki. Like we make 2,000 a month, it's a joke. I already had a final interview today. Lol"* --- ***"All I need is Chasity and MK"*** --- *"MK to say* ***he touched her boobs (which she told me she would say)"***

*(Emp added)*

## THE GIRARDI, ALLRED, REEVES, KHAN, TAYLOR, AND JONES RICO CONSPIRACY THAT PREDICATED FRAUDULENT STATE COURT JUDGEMENT LIENS

79.   In 2015 DAVID engage in a consensual relationship with MARY RIZZO known from hereinafter as RIZZO.

80.   RIZZO worked as an employee at DAVID's Hologram USA company.

81.   At a later time during the acquaintance, RIZZO employed the legal counsel of ALLRED to bring forth a workplace related lawsuit against DAVID.

82.   The lawsuit was settled under a strict Confidentiality Agreement for an undisclosed amount.

83.   At a date uncertain but following the date of the Confidential Settlement Agreement, ALLRED confided in REEVES the settlement amount that DAVID had made to RIZZO.

84.   REEVES shared the ALLRED information with TAYLOR who subsequently announced the confidential settlement amount during an employee related dinner at Cafe Roma in Beverly Hills, California where JONES, KHAN and others were present.

85. According to RIZZO, news of the settlement amount inspired a scheme by REEVES, KHAN, TAYLOR, and JONES to extort DAVID by way of fraud, in that each would testify for each other as needed.

86. During this period REEVES, KHAN, TAYLOR, JONES and JANE DOE acted in furtherance of the scheme to engage in copycat conduct for the purpose of acquiring money from DAVID for themselves through fraudulent means.

87. ALLRED encouraged REEVES to recruit TAYLOR, KHAN, and JONES as part of the fraudulent litigation scheme.

88. ALLRED then referred of the fraudulent representation of REEVES to her daughter BLOOM.

89. The fraudulent actions of TAYLOR caused DAVID to threaten criminal charges as reported by the May 7, 2016 telephone text communication between RIZZO and JONES.

90. The referred to May 7, 2016 text messages were denied evidentiary admittance during all relevant state court litigations.

91. JONES: *"He told me he was filing criminal charges against her."*

92. RIZZO: *"Damn. Poor Elizabeth. MK too?"*

93. JONES: *"No."*

94.        RIZZO: *"You know what's crazy…I still have text from*

*Elizabeth saying all she needs is MK and you to talk."*

95.        JONE: *"She asked me to help her case and kept calling*

*me over and over via text but I'm not sure if she told me to file*

*against him or not bc I wasn't   paying attention to her."*

*************

*"Yes I'm sure. Elizabeth prob said we all seen it or something. Who know*

96.        RIZZO: *"Yea she probably did. I never did tho."*

*************

97.        JONES: *"I never seen him touch her but she always had*

*something to say about everyone  lol*

98.        RIZZO: *"OMG she did! Lol" – "She liked to gossip"*

99.        JONES: *"Yep"*

100.        RIZZO: *"Even about fake stuff"*

101.        JONES: *"Lol yes"*

102.  The conspiracy between ALLRED, REEVES,  KHAN, TAYLOR, JONES,

GIRARDI and DOE did not transact because of sexual related misconduct on the

part of  DAVID, but for reasons that each defendant was disgruntled due to the

dollar amount in salaries and or commissions that each defendant was being paid

under DAVID's employ.

103.  In the May 26, 2015 text conversation between RIZZO and JONES, JONES on reveals as much:

104.       JONES: *"I hate Filmon!!" – "I'm quitting for sure! They only paid me part of my commission and Alki agreed to pay me and Peter don't want to pay. Alki said he was going to make sure I get paid but this is not right I have to fight for my money."*

105.       RIZZO: *"I can't believe that. That company is ridiculous. It's funny how everyone has trouble getting paid there commissions but that never was a problem for Jill in the UK. Makes you wonder."*

            *************** NOVEMBER 16, 2015

106.       JONES: *"I'm going to call the lawyer back. That what Alki get!!!!"*

107.       RIZZO: *"Lol"* --- *"Yea I knew something was up when MK stopped showing up."*

108.       JONES: *"I think I'm going to sue him too bc he deserves it by the way he treat people and the things he do to people"* --- *"I'm going to call Elizabeth today this afternoon"*

            ****************

109.       RIZZO: *"It's not just Elizabeth but MK and now you"*

1. CIVIL RACKETEERING - 22

110.        JONES: *"Yes"* --- *"He's a looser!!!!"*

*************** NOVEMBER 17, 2015

111.        JONES: *"I'm going to sue Alki for harassment. I'm going to*
*go home and find another attorney today and go over all my*
*notes I kept"*--- *"That whok company is dirty"*--- *"They are*
*trying to go public and that not fair how he does me and*
*people"* --- *"I'm going to call and retract my statement from*
*Barry Rotyman too"*

112. Upon knowledge and belief the defendants made fraudulent allegations  in California state civil court proceedings (usually of a sexual nature) against wealthy persons, corporations (both domestic and international), celebrities and business executives, to include but not limited to Plaintiffs to the instant case.

113. The uses of emails, telephone communications, text messages, and or (EFSP) electronic court filings, to include but not limited to electronic court filings made to The Superior Court of Los Angeles County, California, in Cases: BC654017 *Kahn v. Hologram USA*, BC643099 *Reeves v. Hologram USA*, BC649025 Taylor / *Jones v. David*, BC649025 were an essential part of the continuing course of conduct to defraud, for the purpose of predicated acts of racketeering and unlawful racketeering activities.

114.  The GIRARDI-KEESE Law Firm and or attorneys engaged in a course of racketeering conduct therewith, and in furtherance of the scheme to defraud, represented the non-attorney co-participants clients as civil lawsuit litigants in state court proceedings, where quid pro quo agreements were made between the GIRARDI-KEESE Law Firm, and participating retired and or GIRARDI influenced "private" and active judges to secure the return of civil court rulings bearing lucrative award of judgments against the fraudulently victimized defending party or otherwise wealthy persons, corporations (both domestic and international),  celebrities, and business executives to include Plaintiffs to the instant case.

115.  In other words, the civil cases were "fixed" by and for GIRARDI in favor of the non-attorney co-participant clients.

> *"I get along great with all the judges, I can do some real good sh\*t.*
> *But I want to make sure you know we'd be joined at the hip."*

> *Thomas Girardi*

116. The GIRARDI-KEESE Law Firm, subsequently collected enrichments from the fraudulent litigations for the GIRARDI-KEESE Enterprise to payout professional debts, and or payments to benefit the non-attorney co-participants clients who acted in concert, and as members of the enterprise to include but not limited to REEVES, KHAN, TAYLOR, JONES and DOE.

117. The GIRARDI-KEESE Law Firm further diverted ill-gotten proceeds from the scheme to personal and political belonging to GIRARDI himself and campaign accounts of NEWSOM.

118. Other conspiring and or colluding lawyers and or parties acted in furtherance to obtain money derived from the GIRARDI-KEESE Enterprise in support of the general scheme to defraud.



119. *"First, he unambiguously finds that Girardi was running a Ponzi scheme," Edelson wrote. "Given that Girardi and his firm got away with this **for decades**, it is remarkable that this is the first time we have seen this finding in such a clear and unambiguous way. Second, he leaves little doubt about his views about what others at the firm knew about the illegal scheme."* (Emp added)

*Jay Edelson*

## GIRARDI-KEESE USED NON-ATTORNEY CO-PARTICIPANTS

120. Defendants REEVES and KHAN are non-attorney co-participant clients of ALLRED, MAROKO & GOLDBERG, and acted together, with the GIRARDI-KEESE Enterprise for a common purpose to defraud and to benefit from proceeds derived from racketeering activities to include federal wire fraud.

121. Defendants TAYLOR and JONES acted in a course of conduct with the GIRARDI-KEESE Enterprise through ALLRED, AND BLOOM to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of approximately $11,000,000.00 against the plaintiffs.

122. Defendant KHAN acted in a course of conduct with the GIRARDI-KEESE Enterprise through ALLRED, MAROKO & GOLDBERG to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of approximately $58,250,000.00 against the plaintiffs.

123. Defendant REEVES acted in a course of conduct with the GIRARDI-KEESE Enterprise through ALLRED, MAROKO & GOLDBERG to acquire one or more fraud induced civil lawsuit awards in the aggregate amount of approximately $4,795,000.00 against the plaintiffs.

124. Defendant REEVES and KHAN acting under the direction and or influenced of ALLRED, GOLDBERG, LEAL, MOCHKATEL, AMG, and other parties within the GIRARDI KEESE Enterprise, and through a course of conduct for the common purpose to defraud, performed as non-attorney co-participant

clients against DAVID; FILMON LTD.; FILMON INC., and ALKI DAVID PRODUCTION INC. REEVES and KHAN, at all times relevant was aware that their civil court claims against DAVID; FILMON LTD.; FILMON INC., were false and predicated upon a fraudulent scheme advanced by ALLRED, GOLDBERG, LEAL, MOCHKATEL, and AMG on behalf of the GIRARDI-KEESE Enterprise.

125. Defendant JONES was recruited by TAYLOR under the direction and influenced of ALLRED and BLOOM, and other parties within the GIRARDI-KEESE Enterprise to act under a course of conduct for the common purpose to defraud.

126. Both JONES and TAYLOR performed as non-attorney co-participant clients against DAVID; FILMON LTD.; FILMON INC., and ALKI DAVID PRODUCTION INC. TAYLOR and JONES, at all times relevant were aware that their civil court claims against DAVID; FILMON LTD.; FILMON INC., were false and predicated upon a fraudulent scheme advanced by BLOOM and ALLRED.

127. CHORA is an attorney and acts as "enforcer" or otherwise as collection agent for the GIRADI-KEESE Enterprise.

128. On or about January 7, 2023, CHORA engaged in conduct to collect an unlawful debt against DAVID, and that such debt was generated by a pattern of

racketeering activity. Federal law under 18 U.S.C. § 1962(a) prohibits the collection of debt predicated upon unlawful activities. CHORA acts as the "Enforcer" for the GIRARDI-KEESE Enterprise.

129.   LEAH WILSON acted in a course of conduct with the GIRARDI-KEESE Law Firm to conceal, secret and or cover-up complaints of corruption involving GIRARDI and or the attorneys associated with the GIRARDI-KEESE Enterprise for the common purpose of continuing the conduct of the Enterprise.

130.   FILMON LTD., is a United Kingdom based company that delivers conservative streaming media broadcast by way of the internet.

131.   FILMON LTD., often covers conservative political viewpoints and news matters that involves corruption in government.

132.   COMCAST INC., and COMCAST LLC., are connect to THOMAS GIRARDI through professional and or political associations.

133.   COMCAST INC., and COMCAST LLC., censored FILMON LTD., or caused its censoring to conceal and or prevent FILMON LTD., from exposing early on the corrupt and racketeering activities of the GIRARDI-KEESE Enterprise.

134.   The censoring of FILMON LTD., by COMCAST INC., and COMCAST LLC., lessened competition with their telecommunications brands by injury, destruction, and or preventative competition to FILMON LTD., and its customer base market throughout the United States.

## **FACTUAL ALLEGATIONS OF RACKETEERING**

135. Girardi was once a top plaintiffs' attorney and Democratic powerbroker who gained reality TV fame on "Real Housewives of Beverly Hills" alongside his third wife, Erika.

136. His downfall in December 2020 was in part triggered by a federal judge finding that he had misappropriated millions from families of those killed in an Indonesian plane crash. But after the collapse of his Wilshire Boulevard law firm, scores of clients came forward saying they were swindled by Girardi and 137.

The Los Angeles Times documented a trail of misconduct and allegations going back decades.

138. The Chicago based Edelson law firm accused Girardi and other lawyers at his defunct firm of running ***"the largest criminal racketeering enterprise in the history of plaintiffs' law,"*** pocketing millions from clients, vendors and fellow attorneys.

139. On December 07, 2016, REEVES, represented by ALLRED, sued DAVID, Hologram USA, FILMON LTD, and ALKI DAVID PRODUCTIONS, in state court and more specifically Los Angeles Superior Court, Case No. BC643099.

140. The case involved fraudulent civil litigation premised on allegations of sexual battery and or sexual harassment purportedly by DAVID.

141. Defendant ALLRED's partners, GOLDBERG, LEAL, MOCHKATEL and AMG represented REEVES, who worked as a comedy writer for FILMON LTD.

142.  On April 15, 2020, a civil judgment for REEVES was entered against the corporate defendants' Hologram USA, Inc., ALKI DAVID PRODUCTIONS, INC., and FILMON LTD in the amount of $650,000 for compensatory damages.

143.  REEVES later agreed to a reduction in her compensatory award in the amount of $445,000.

144.  REEVES, at all times was aware that her civil lawsuit and the claims made against the relevant Plaintiffs were predicated upon knowingly false allegations and fraud.

145.  A punitive damages award in the amount of $4.35 million was entered against DAVID for the aggregate sum of $4,795,000.00.

146. The fraud induced award and judgment lien  against Hologram USA, Inc., ALKI DAVID PRODUCTIONS, INC., and FILMON LTD restrained commerce and the plaintiff's ability to conduct trade and or business in the Unites States.

147.  Defendant DAVID on four occasions sought to have THE BAR address his legitimate claims concerning the egregious and unethical conduct of ALLRED and her partners.

148.  DAVID sent correspondence to WILSON, who served during all times relevant as the Executive Director of THE BAR.

149. THE BAR ignored three prior complaints that DAVID had sent to THE BAR where the Complaints never lead to an investigation into the unethical

conduct of ALLRED or GIRARDI, and the unlawful conduct was able to continue.

150.  WILSON, who apparently had not even read the attachments sent to her by DAVID responded on June 25, 2022, asking *"have you considered filing a complaint against Ms. Allred or Ms. Bloom?"*

151.  On April 29, 2020, Attorney Murray B. Greenberg, Esq. wrote to THE BAR regarding DAVIDs' submitted complaints.

152. Attorney Greenberg wrote on behalf of DAVID against attorneys ALLRED, GOLDBERG, LEAL and MOCHKATEL based on their professional misconduct in a case held before Judge Michelle Williams Court in Los Angeles Superior Court, Central District Case No. BC654017 entitled MAHIM KHAN, Plaintiff v. HOLOGRAM USA, Inc; ALKI DAVID PRODUCTIONS, INC.; FILMON TV, INC.

153. THE BAR while engaging in a course of conduct as a continuing enterprise unit, from at least the year 2015 until present failed to investigate many complaints.

154. The Press has widely reported that THE BAR has failed to effectively discipline corrupt attorneys, allowing lawyers to repeatedly violate professional standards, and harm members of the public, however COMCAST INC., and

COMCAST VENTURES, LLC, acted to censor or caused to be censored the matter involving DAVID as a victim to the identical subject matter.

155.  Upon knowledge and belief COMCAST retaliated against the Plaintiffs in part, for unfavorable litigation in *Filmon Inc v. Doubleverify Inc*, Supreme Court State of California, No. 244156 (May 6, 2019).

156.  Recently, it has been revealed by the Press that GIRARDI was involved with securing Judges to rule for a particular party in many cases. GIRARDI was the "Fixer" of cases for a certain network of attorneys as reported by another attorney.

157.  On information and belief ALLRED is but one of the attorneys for whom GIRARDI fixed several cases including Los Angeles Superior Court cases No. BC654017 *Kahn v. Hologram USA*, BC643099 *Reeves v. Hologram USA*, BC649025 *Jones v. David*, BC649025 *Taylor v. David*,, involving the parties of DAVID, Hologram USA, FILMON LTD, and ALKI DAVID PRODUCTIONS.

158.  The corruption recently discovered as portrayed in numerous domestic and international news platforms, layout in detail the vast schemes in which the GIRARDI-KEESE Enterprise is involved with on a global level.

159.  The matter is still being investigated on a regular basis. The amount of corruption and scheme types by the GIRARDI-KEESE Enterprise are exposed

on a regular basis as investigations yield substantial evidence in support of this matter is ever growing.

160.  Defendant DAVID and his attorney at the time of being sued by REEVES complained to the court, and to THE BAR about the unethical and criminal behavior of ALLRED and her partners.

161.  Defendants ALLRED, GOLDBERG and their law firm partners in the REEVES litigation, and in inter-related cases, including *Mahim Khan v. Hologram USA, Inc., Alki David Productions, Inc., FilmOn TV, Inc., Alkiviades David*, Case No. BC 654017, (KHAN) switched exhibit and witness lists in those trials, and forged the signature of Ellyn Garofolo, who at that time was counsel for DAVID, ALKI DAVID PRODUCTIONS, INC, and FILMON INC.

162.  *KHAN* was a highly contentious lawsuit which involved the Enterprises' status quo allegations of battery and sexual harassment against wealthy persons, corporations (both domestic and international), celebrities, and business executives to include DAVID, ALKI DAVID PRODUCTIONS, INC, and FILMON INC.

163.  The most egregious ethical breach involved the manipulation of a joint exhibit list by KAHN's attorneys which caused a materially altered list to be filed with the court.

164.  As if this action was not serious enough, KAHN's attorneys also removed the signature page of the DAVID's attorney's (Ellyn S. Garofalo) and subsequently affixed it to a previously agreed upon version.

165. KAHN's attorneys then attached the forged signature to the fraudulent version after discovery that attorney Garofalo was unavailable.

166.  GOLDBERG then signed the exhibit list and filed it with the court.

167.  The act was done without the knowledge, permission or authorization of Ms. Garofalo or anyone else in her office.

168.  GOLDBERG performed this particular act for the common purpose of the Enterprise to acquire money through racketeering activities.

169.  Defendants LEAL and MOCHKATEL were two other attorneys listed on the pleading as well as ALLRED who is a partner of the law firm.

170.  In addition to the above-referenced misconduct, the attorneys for KHAN sought to exclude documents that were previously produced to her attorneys by indicating falsely to the court that they were not disclosed or produced in discovery.

## FIRST CLAIM FOR RELIEF

171.  (***Racketeering Influenced and Corrupt Organization 18 U.S.C. § 1961, 1964(c)***)

**THOMAS GIRARDI; GLORIA ALLRED; NATHAN GOLDBERG; RENEE MOCHKATEL; DOLORES Y. LEAL; LISA BLOOM; JOSEPH CHORA; LEAH WILSON; GAVIN NEWSOM; ALLRED, MAROKO & GOLDBERG; THE STATE BAR OF CALIFORNIA; LAUREN REEVES; ELIZABETH TAYLOR; MAHIM KHAN; CHASITY CHARNISE JONES; LAUREN REEVES; COMCAST INC.; COMCAST VENTURES, LLC.**

172. Plaintiff incorporates by reference and re-alleges pages 1 through 34 set forth above and Case No. BC643099 Los Angeles Superior Court – No. BC654017 *Kahn v. Hologram USA*, BC643099 *Reeves v. Hologram USA*, BC649025 *Jones v. David*, BC649025 *Taylor v. David*.

173**.** Plaintiff claims that Defendants' conduct under the common purpose to defraud, and the conduct of each Defendant named above, constitutes racketeering as set forth in 18 U.S.C. § 1964(c).

174. Specifically, Congress has defined "racketeering" to include wire fraud or committing fraud by means of electronic transmissions over wire.

175. The Defendants engaged in multiple instances of wire fraud, including fraudulent electronic state court filings by wire.

176. The federal wire fraud statute pursuant to 18 U.S.C. § 1343 makes it unlawful to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises,

and transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme.

177.  Defendants engaged in wire fraud by the use of telephone communications and or electronic state court filings of litigation papers, each paper filed constituting a separate and distinct violation of the wire fraud statute. 178.   In summary, Section 1962(c) provides relief against parties who engage in a pattern of racketeering activity, Section 1962(a) provides relief against parties who use income generated through a pattern of racketeering activity, and Section 1962(d) provides relief against those who conspire to violate the racketeering laws.

179.  Defendants are liable under each of these three sections of the statute. Further, 18 U.S.C. § 1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee …."

## SECOND CLAIM FOR RELIEF

180. *(Civil Conspiracy to Commit Fraud – Texas - (§ 15.02. Criminal Conspiracy))*

**THOMAS GIRARDI; GLORIA ALLRED; NATHAN GOLDBERG; RENEE MOCHKATEL; DOLORES Y. LEAL; LISA BLOOM; JOSEPH CHORA; LEAH WILSON; GAVIN NEWSOM; ALLRED, MAROKO & GOLDBERG; THE STATE BAR OF CALIFORNIA; LAUREN REEVES; ELIZABETH TAYLOR; MAHIM KHAN; CHASITY CHARNISE JONES; LAUREN REEVES; COMCAST INC.; COMCAST VENTURES, LLC;.**

181.  Plaintiff incorporates by reference and re-alleges pages 1 through 34 set forth above.

182.  At all times relevant, the Defendants agreed to and did conspire to willfully and maliciously injure Plaintiffs in its property, reputation, trade, business or profession through the fraud committed by the GIRARDI-KEESE Enterprise as described below.

183.  Defendants, through the GIRARDI-KEESE Enterprise, have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct and the affairs of the GIRARDI-KEESE Enterprise as alleged in the preceding sections.

184.  Defendants, and each of them, conspired to commit the frauds alleged within this Complaint, in that all Defendants conspired to accomplish the fraudulent litigation scheme.

185.  Defendants had a meeting of the minds to accomplish that goal through one or more unlawful acts of fraud as alleged herein, and Plaintiffs suffered harm as a result of Defendants' conduct and conspiracy.

186.  As a direct and proximate consequence of the Defendants' conspiracy, Plaintiffs has been injured in its business and property, causing Plaintiffs to suffer monetary damages in an amount not less than $85,045,000.00 said damages to be proven at the time of trial.

187.  Because Defendants violation the terms of 18 U.S.C. § 1964(c), Defendants are liable to Plaintiff for three times the damages Plaintiff has sustained, plus the cost of this suit, including reasonable attorneys' fees and any injunctive relief the court deems reasonable.

188.  Defendants' conduct as alleged in pages 1 through 34 and incorporated herein was done in furtherance of their informal association together for a common purpose of engaging in a course of conduct as a continuing unit.

189.  Accordingly, the Plaintiffs is entitled to an award of punitive damages from Defendants and each of them in an amount to be proven at trial and sufficient to punish, penalize and deter Defendants from engaging in such conduct in the future.

**JURY DEMAND**, Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demands a trial by jury on all issues so triable that are raised herein or which hereinafter may be raised in this action.

**PRAYER FOR RELIEF WHEREFORE**, Plaintiffs prays for judgment against Defendants as follows:

1. Finding that all defendants are jointly and severally liable for all damage caused to Plaintiffs;

2. Awarding Plaintiff monetary damages in an amount not less than $85,045,000.00 said amount to be proven at trial;

3. Awarding Plaintiffs enhanced (treble) monetary damages pursuant to 18 U.S.C. § 1964(c);

4. Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

5. Awarding Plaintiffs punitive damages in the sum of not less than $100,000,000.00 or an amount otherwise to be decided by a jury; and

6. Granting such other relief as the case may require or as may be deemed proper and equitable.

   Respectfully Submitted,

   Law Office of Ronda Baldwin-Kennedy

Date: <u>March 8, 2023</u>           <u>/s/ Ronda Baldwin-Kennedy</u>
                                     Ronda Baldwin-Kennedy

                                     Attorney for Plaintiffs